```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


SHIRLEY STONE,                      )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     No. 4:10 CV 1428 DDN
                                    )
NATIONAL UNION FIRE INSURANCE       )
COMPANY OF PITTSBURGH, PA,          )
                                    )
            Defendant.              )
```

## MEMORANDUM

This action is before the court on the motion of defendant National Union Fire Insurance Company of Pittsburgh, PA for summary judgment. (Doc. 28.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12.) Oral arguments were heard on October 24, 2011.

## I.  BACKGROUND

On June 19, 2010, plaintiff Shirley Stone commenced this breach of insurance contract action in the Circuit Court of the City of St. Louis, Missouri, against defendant AIG Domestic Claims, Inc. (Doc. 1-1.) AIG removed the suit to this court based on diversity of citizenship subject matter jurisdiction, 28 U.S.C. § 1332. On September 14, 2010, plaintiff voluntarily dismissed AIG and filed an amended complaint naming National Union Fire Insurance Company of Pittsburgh, PA as defendant. (Doc. 16.)

In her complaint, plaintiff raises two claims for relief. In Count I, she alleges defendant breached the insurance contract by denying her claim for disability benefits and medical expenses. (Id. at ¶¶ 1-9.) In Count II, she alleges defendant's denial of her claim was a vexatious refusal to pay. (Id. at ¶¶ 1, 2.)

## II.  MOTION FOR SUMMARY JUDGMENT

Defendant argues that summary judgment is appropriate because plaintiff's stroke was not an "injury" caused by an "accident" within the

meaning of the insurance policy.  Defendant also argues that plaintiff's stroke was proximately caused by smoking, hypertension, and a blood clot, not an accident or trauma.  Defendant further argues that diseases are excluded under the insurance policy and that denial of plaintiff's claim was proper and not vexatious.  (Docs. 28, 29.)

Plaintiff responds that she was entitled to benefits under the insurance policy because her stroke was an "accident" in that it was an unintended and unexpected event.  Plaintiff also argues that summary judgment is inappropriate because factual disputes exist concerning whether she had hypertension and if so, whether hypertension was the proximate cause of her stroke.  Plaintiff further argues that defendant has not proven that her stroke was a "disease" subject to exclusion under the insurance policy.  (Docs. 31, 33.)

Defendant replies that a stroke cannot be an "accident" unless caused by some external trauma.  Defendant also replies that plaintiff suffered from hypertension and that a stroke is a "cerebrovascular disease."  (Doc. 34.)

### III.   STATEMENT OF UNDISPUTED FACTS

On February 23, 2007, Shirley Stone and her husband, Tom Stone, completed an orientation necessary to work driving a truck for Henderson Trucking.  (Doc. 30 at ¶ 14.)  Upon completing the orientation, they worked driving a truck for Henderson Trucking as a "team," wherein they would take turns driving the truck for 10-hour shifts.  (Id. at ¶ 15.)

In late-April, 2007, the Stones embarked to deliver a load from the East Coast to California.  (Id. at ¶ 16.)  On April 29, 2007, between 7:00 p.m. and 8:00 p.m., Shirley completed her driving shift.  (Id. at ¶ 17.)  Tom took over the driving while Shirley went to lay down in the "sleeper" area of the truck.  (Id.)  On April 30, 2007, at around 3:30 a.m., Tom stopped at a rest area near Laramie, Wyoming.  (Doc. 30 at ¶ 18.)  Around four hours later, Shirley woke up and went to the restroom to brush her hair and teeth.  (Id. at ¶¶ 19, 20.)  Up to this point, the Stones had not encountered any unexpected events, and the trip was routine.  (Id. at ¶ 25.)  When she returned to the truck, Shirley had a craving for a banana, which she began trying to peel.  (Id. at ¶ 20.)

Having woken up, Tom noticed Shirley struggling to peel the banana, and thought she was having a stroke. (Id.) He immediately drove Shirley to Ivinson Memorial Hospital in Laramie. (Id.)

Not long after arriving at Ivinson, Shirley was airlifted to Swedish Medical Center in Denver, Colorado. (Doc. 30 at ¶ 20.) Before waking up in the hospital, the last thing she could remember was craving a banana. (Id. at ¶ 21.) Her recovery was good, and she was discharged 10 days later. (Id. at ¶¶ 13, 22.)

### Medical History and Diagnoses

After her release, Shirley sought treatment for her stroke from Dr. Eliahu Feen, a neurologist at St. Louis University Hospital. (Id. at ¶¶ 1, 2, 6.) With a reasonable degree of medical certainty, Dr. Feen diagnosed Shirley as having had an ischemic stroke, specifically, a right basal ganglia ischemic infarct. (Id. at ¶¶ 2, 9.) Dr. Feen's diagnosis was based on Shirley's medical records from Swedish Medical Center and an MRI that Dr. Feen had ordered. (Doc. 30 at ¶ 9.) In 2007 and 2009, Swedish Medical Center and Barnes-Jewish Hospital, respectively, made diagnoses consistent with Dr. Feen's diagnosis. (Id. at ¶ 10.)

While commonly known simply as a "stroke," the proper modern medical term for a "stroke" is a "cerebrovascular disease." (Doc. 30 at ¶ 12.) This is distinct from the term "cerebrovascular accident," which is an older, disfavored term that historically was used to refer to a disease distinct from a stroke. (Doc. 30-3, Feen Aff. at 5:8-15.)

Smoking is a lifestyle factor that increases the risk of stroke. (Doc. 30 at ¶ 5.) Smoking causes cardiovascular changes which can include calcification of the arteries and deposition of fat or complex lipids onto artery walls, and induces certain vascular changes including "spam," or narrowing of the arteries, which can lead to a stroke. (Id. at ¶ 4.)

At the time of her stroke, Shirley had smoked one and one-half packs of cigarettes each day for over 32 years. (Id. at ¶ 7.) This put her at a higher risk for an ischemic stroke than someone of similar age with a similar medical history who did not smoke. (Id.) She still smokes, despite her physician's advice to stop. (Id. at ¶ 8.) Her smoking

- 3 -

continues to put her at a higher risk for another ischemic stroke.  (Id.) Dr. Feen believes Shirley's smoking is her biggest risk factor.  (Doc. 30 at ¶ 8.)

Hypertension is also one of the largest risk factors for strokes because it induces vascular changes in the arteries of the brain and other organs, which increases the risks that those arteries will either rupture or occlude.  (Id. at ¶ 3.)

Dr. Feen opined that Shirley's stroke was generally caused by a combination of hypertension and smoking, and was proximately caused by an occlusion, or blockage, of a blood vessel leading to her brain.  (Id. at ¶ 11.)  Based on Shirley's medical records and medical history, Dr. Feen concluded that Shirley's stroke was not caused by head or body trauma.  (Id. at ¶ 23.)

Shirley and Tom believe that Shirley suffered no head or body trauma from January 1, 2007 through April 30, 2007.  (Doc. 30 at ¶ 24.)  Prior to April 30, 2007, there was no accident or other event that led Shirley or Tom to suspect that Shirley would have a stroke.  (Id. at ¶ 26.)

Insurance Policy

Upon completing their orientation on February 23, 2007, Shirley and Tom enrolled in an insurance program with National Union Fire Insurance Company of Pittsburgh, PA.  (Id. at ¶ 28.)  The terms of the insurance policy (Policy) include:

> **Section I**
>
> \* \* \*
>
> **Dispatch** means the period of time during which an insured operates his or her vehicle, while being en route to pick up a load, picking up a load, en route to deliver a load, or unloading a load.
>
> \* \* \*
>
> **Injury** means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this Policy, which results directly and independently of all other causes in a Covered Loss.  All Injuries sustained by an

Insured Person in any one accident shall be considered a single Injury.

\* \* \*

**Section IV**               **Benefits**

**Temporary Total Disability Benefit**

If Injury to the Insured Person results in Temporary Total Disability within the Commencement Period shown in the Schedule, and if the Insured Person is under age 65 on the day the Temporary Total Disability begins, the Company will pay the Temporary Total Disability Benefit specified below, subject to satisfaction of any applicable Waiting Period shown in the Schedule.  The Commencement Period starts on the date of the accident that caused such Injury. . . .

\* \* \*

**Accident Medical Expenses Benefit**

If an Insured Person suffers an Injury that requires him or her to be treated by a Physician, within the Commencement Period shown in the Schedule, the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accidental Medical Services received due to that Injury, up to the Maximum Benefit Amount and Maximum Benefit Period shown in the Schedule per Insured Person for all Injuries caused by a single accident, subject to any applicable Deductible Amount. The Commencement Period starts on the date of the accident that caused such Injury. . . .

\* \* \*

**Section VI**               **Exclusions**

This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:

\* \* \*

2.  sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning;

\* \* \*

**NON-OCCUPATIONAL COVERAGE RIDER**

This Rider is attached to and made part of the Policy as of the Policy Effective Date shown in the Policy's Master

>Application. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.
>
>**Non-Occupational Coverage.** References in the Policy to an Injury or accident, where applicable, are hereby deemed to include Non-Occupational Injury and Non-Occupational Accident, respectively.
>
>Benefits shall be payable for only those Covered Losses listed in the Schedule under Non-Occupational Accident Benefits, and shall be subject to the Non-Occupational Accident Benefit limitations shown therein.
>
>**Non-Occupational** - as used in this Rider, means, with respect to an activity, accident, incident, circumstance or condition involving an Insured Person, that it does not occur or arise out of or in the course of the Insured Person performing Occupational services for the Contractee, while under Dispatch.
>
>**Non-Occupational Injury** - as used in this Rider, means, bodily Injury caused by a Non-Occupational accident occurring while this Policy is in force as to the person whose Injury is the basis of claim and resulting directly and independently of all other causes in a Covered Loss.
>
>All injuries sustained by an Insured Person in any one accident shall be considered a single injury.

(Doc. 30-1 at 6, 11, 13, 15, 18, 31.)

### Claim for Benefits

On May 12 or May 13, 2007, Tom Stone called National Union to make a claim in connection with Shirley's stroke. (Doc. 30 at ¶ 29.) On October 8, 2007, National Union denied the claim. (Id. at ¶ 30.)

### IV. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the

- 6 -

nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co. v. Stone, No. 1:09 CV 1 SNLJ, 2010 WL 330328, at *2 (E.D. Mo. Jan. 21, 2010).

## V. DISCUSSION

The parties agree that Missouri law applies in this diversity of citizenship action. Under Missouri law, the interpretation of an insurance contract is a question of law. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, 705 (Mo. 2011) (en banc). When interpreting insurance contract terms, the court should apply meanings understood by ordinary people purchasing the insurance. Id. at 705-06. The court should interpret the policy "so as to afford rather than defeat coverage." Murray v. Am. Fam. Mut. Ins. Co., 429 F.3d 757, 764 (8th Cir. 2005) (citation omitted) (applying Missouri law). Ambiguities in the insurance contract must be construed against the insurer. Id. The insured bears the burden of proving coverage, while the insurer bears the burden of establishing the applicability of an exclusion. State Farm Mut. Auto. Ins. Co. v. Stockley, 168 S.W.3d 598, 600 (Mo. Ct. App. 2005).

To establish a breach of insurance contract claim, the plaintiff bears the burden of proving: (1) the insurance policy was issued, (2) the insurance policy was delivered, (3) she paid the premiums associated with the insurance policy, (4) the loss alleged was covered by the insurance policy, and (5) proper notice was given to the insurer according to the

terms of the insurance policy.  Mo. Commercial Inv. Co. v. Employers Mut. Cas. Co., 680 S.W.2d 397, 400 (Mo. Ct. App. 1984).

### A.  Count I:  Breach of Insurance Contract

The parties agree that plaintiff's stroke was caused generally by smoking and hypertension and proximately by a blood clot. (Doc. 30 at ¶ 11.) Plaintiff contends her stroke was an "injury" because it was an "accident," and that her stroke was an "accident" because it was an unintended or unexpected event. Defendant contends plaintiff's stroke was not an "accident" because it was not caused by an external event.[1] Missouri courts have not addressed whether a stroke or similar type of medical issue constitutes an "accident" under an accident insurance policy when the stroke or medical defect is not preceded by some external event, i.e. whether a stroke itself can be an "accident."

The court need not resolve this novel question of Missouri law because coverage was precluded by the Policy's disease exclusion.[2] Section VI of the Policy excludes coverage for losses caused by "sickness[] [or] disease." (Doc. 30-1 at 18.) According to the undisputed facts, plaintiff's claim arose from her "stroke," or "cerebrovascular disease." Using the plain terms of the Policy,

---

[1]The parties agree that on April 30, 2007, plaintiff was "under dispatch" within the meaning of the Policy. (Doc. 35 at ¶ 10.) See Great West Cas. Co. v. Wenger, 748 S.W.2d 926, 927 (Mo. Ct. App. 1988) ("[I]t is understood in the trucking industry that a truck is under dispatch from the time the load is picked up for transport until the driver returns the empty trailer.").

[2]Authority from other courts and secondary sources suggests that an event must be caused, at least in part, by an external event to be an "accident." See Khatchatrian v. Continental Cas. Co., 332 F.3d 1227 (9th Cir. 2003); King v. Penn. Life Ins. Co., Civil Action No. 09-13761, 2010 WL 1686446 (E.D. Mich. Feb. 8, 2010) (report and recommendation) adopted by 2010 WL 1686384 (E. D. Mich. Apr. 26, 2010); Boly v. Paul Revere Life Ins. Co., 246 P.3d 1 (Or. App. 2010); Lee R. Russ & Thomas F. Segalla, 10 Couch on Insurance §§ 139:13, 141:4 (3d ed. 2011). Because coverage was precluded by the disease exclusion, the court need not resolve this novel question of Missouri law. See, e.g., MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Assoc., 546 F.3d 533, 540 n.4 (8th Cir. 2008) (declining to address novel question of state law where resolution was proper on other grounds).

plaintiff's stroke was a "sickness[] [or] disease" for which coverage was excluded under the Policy.  See Crosswhite v. Reliance Standard Life Ins. Co., 259 F. Supp. 2d 911, 918 (E.D. Mo. 2003) (holding coverage for stroke was precluded by policy exclusion for losses in which a "sickness, disease, or myocardial infarction" was a contributing factor).

Plaintiff attempts to evade the disease exclusion by relying on medical records reflecting diagnoses of "cerebrovascular accident" in lieu of "stroke."  However, the undisputed facts reveal that the term "cerebrovascular accident" is simply an antiquated term for "stroke," and that use of the term "cerebrovascular accident" is now disfavored in the medical community; the proper term is "stroke" or "cerebrovascular disease."  Based on the undisputed facts, defendant has met its burden of showing that plaintiff's "stroke" or "cerebrovascular disease" was a "sickness[] [or] disease," such that coverage for losses arising therefrom is precluded by the Policy's disease exception.  See id.

In sum, coverage for plaintiff's stroke was precluded under the Policy by the disease exclusion.  Therefore, defendant did not breach the Policy by denying plaintiff's claim.

**B. Count II:  Vexatious Refusal to Pay**

In Count II, plaintiff alleges that defendant's denial of her claim for benefits under the Policy was vexatious.  Because defendant's denial of plaintiff's claim for benefits was proper, defendant cannot be held liable for vexatiously refusing to pay.  Hite v. Am. Fam. Mut. Ins. Co., 815 S.W.2d 19, 23 (Mo. Ct. App. 1991).

## VI.  CONCLUSION

For the reasons stated above, the motion of defendant National Union Fire Insurance Company of Pittsburgh, PA for summary judgment (Doc. 28) is sustained.

An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 28, 2011.